UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
                                                :
U.S. COMMODITY FUTURES             :
TRADING COMMISSION,                :
                                                :   16-CV-4120 (VEC)
            Plaintiff,                          :
                                                :
    -against-                                :
                                                :   PLAINTIFF'S MEMORANDUM OF LAW
HAENA PARK, YUL KASEMAN,   :   IN SUPPORT OF ITS MOTION FOR
PHAETRA CAPITAL GP LLC a/k/a  :   SUPPLEMENTAL ORDER OF
ARGENTA CAPITAL GP LLC,        :   STATUTORY AND EQUITABLE RELIEF
PHAETRA CAPITAL MANAGEMENT :   AGAINST HAENA PARK, PHAETRA
LP a/k/a ARGENTA CAPITAL LLC, and :  CAPITAL GP LLC, PHAETRA CAPITAL
ARGENTA GROUP LLC,              :   MANAGEMENT LP, AND ARGENTA
                                                :   GROUP LLC
            Defendants.                     :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

      For six years, Haena Park deceived and defrauded her closest family and friends. She solicited more than $23 million from at least 50 investors to trade in an unregistered commodity pool, and lost nearly all of the funds through trading and misappropriation. She hid her mounting losses from investors, while continuing to solicit and distribute money in a Ponzi-like fashion.

      In June 2016, the Commodity Futures Trading Commission ("CFTC" or "Commission") filed a seven-count Complaint against Park, her companies Phaetra Capital GP LLC, Phaetra Capital Management LP, and Argenta Group LLC (collectively, "Corporate Defendants"), and Park's business partner Yul Kaseman. (ECF No. 1.) The Complaint charged Park and Corporate Defendants (collectively, "Park Defendants") with violating numerous provisions of the Commodity Exchange Act in connection with Park's fraud, and charged all defendants with making false statements to the National Futures Association ("NFA").

      Park has already pleaded guilty in a separate criminal proceeding arising out of the same facts. *United States v. Park*, No.1:16 Cr. 473 (RA) (S.D.N.Y. filed July 8, 2016) (*hereinafter*

1

"parallel criminal action") [1]. In the instant case, the Park Defendants have admitted to liability and agreed to certain permanent injunctions via a Consent Order entered by this Court. (ECF No. 50.[2]) The only unresolved issues in this case are the amounts of restitution and civil monetary penalty ("CMP") the Park Defendants should pay as a result of their unlawful conduct.

Given the seriousness of the Park Defendants' fraud, the Commission believes that a significant CMP is appropriate. We respectfully submit this memorandum in support of our Motion for a Supplemental Order of Statutory and Equitable Relief against the Park Defendants ("Motion"). The proposed Order requires the Park Defendants to pay, jointly and severally, restitution in the amount of $22,912,796, to be offset by any restitution Park would pay pursuant to the Order of Restitution in the parallel criminal action. The proposed Order also imposes a $5,220,000 CMP on Park Defendants. Such an order, combined with the Consent Order, would resolve all aspects of the Commission's case against the Park Defendants.

## I.   FACTS

Park has admitted to the facts alleged in the Complaint and the Findings of Fact and Conclusions of Law in the Consent Order, which should be accepted as true by the Court for the purpose of this Motion. Consent Order ¶¶ 11-12, 102. Relevant facts include the following:

A.   <u>Park Defendants' Fraud in connection with the Park Pool</u>

From January 2010 through June 2016 (the "relevant period"), Park, as the control person for the Corporate Defendants, fraudulently solicited and accepted $23,186,860 from more than 50 investors to participate in an unregistered commodity pool (the "Park Pool") to trade off-

---

[1] The court sentenced Park to three years of incarceration followed by 36 months of supervised release, and entered an Order of Restitution requiring Park to pay $22,912,796 to compensate the victims of her fraud. Order of Restitution, *United States v. Park*, No. 1:16 Cr. 473 (RA) (S.D.N.Y. Nov. 9, 2017) (Docket No. 47).

[2] The Consent Order for Permanent Injunction and Other Relief Against Haena Park, Phaetra Capital GP LLC, Phaetra Capital Management LP, and Argenta Group LLC resolved and settled all liability claims against the Park Defendants as to each count of the Complaint and imposed on the Park Defendants a permanent registration and trading ban in the markets supervised by the Commission. *See* Consent Order, ECF No. 50 at ¶¶ 47-53.

exchange foreign currency ("forex") and futures contracts. Compl. ¶¶ 2, 26; Consent Order ¶¶ 20, 24-25. At Park's direction, more than 50 investors deposited more than $23 million into at least four bank accounts opened in Park's name and/or controlled by Park. Compl. ¶¶ 2, 26; Consent Order ¶¶ 20, 24-25.

In soliciting funds from prospective and existing investors, Park told the investors that they were investing in a pooled "friends and family" fund run by one or more of the Corporate Defendants. Compl. ¶ 31; Consent Order ¶ 30. In reality, Park transferred $21.4 million of investors' funds to a personal trading account opened in Park's name at Interactive Brokers, where she traded on behalf of an unregistered commodity pool. Compl. ¶ 26; Consent Order ¶ 27. Park also misappropriated approximately $1.74 million. Compl. ¶ 26; Consent Order ¶ 27.

Over the relevant period, Park's trading on behalf of the unregistered pool resulted in a loss of approximately $19.26 million, or 99% of the total amount Park traded. Compl. ¶ 27; Consent Order ¶ 26. She also withdrew approximately $1.8 million from the trading account. Compl. ¶ 28; Consent Order ¶ 27. By the time Park was arrested in June 2016, the Park Pool was worth only about $196,000. Compl. ¶ 41; Consent Order ¶ 26.

Park hid these losses from investors and represented to existing and prospective investors that the pool was trading at a profit. Compl. ¶¶ 31, 41-42; Consent Order ¶¶ 29-30. To perpetrate her fraud, Park furnished prospective and existing investors with charts purporting to contain actual positive performance data over the preceding months. In truth, the charts contained fabricated data. Compl. ¶¶ 31-40; Consent Order ¶¶ 30-39. Park also provided existing investors with false monthly statements showing profits. Compl. ¶¶ 41-46; Consent Order ¶¶ 40-45. As a result of Park's misrepresentations and omissions, prospective investors wired funds to Park's personal bank accounts to participate in the Park Pool, and existing investors maintained their

investments with Park. Compl. ¶¶ 30-46; Consent Order ¶¶ 29-45.

    B.    <u>Fraud as a Commodity Trading Advisor</u>

Park, individually and on behalf of her company, Argenta Capital LLC, also knowingly made material misrepresentations and omissions regarding her trading expertise, profits, and the track record and performance of the Park Pool to employees and officers of an investment firm based in Louisville, Kentucky ("Firm A"). Compl. ¶¶ 47-52; Consent Order ¶¶ 46-51. As a result of Park's misrepresentations and omissions, Firm A hired Park and Argenta Capital LLC to manage a fund for the firm. Compl. ¶ 51; Consent Order ¶¶ 50-51. Park managed Firm A's funds from March 2013 to June 2014 and traded commodity futures and forex contracts. Compl. ¶ 52; Consent Order ¶ 50. During Park's management, Firm A's funds suffered trading losses of more than $1.9 million, Park was paid approximately $146,238 in management and performance fees. Compl. ¶ 52; Consent Order ¶ 51.

    C.    <u>False Statements to the NFA</u>

Park, individually and on behalf of Phaetra Capital GP LLC and Phaetra Capital Management LP (collectively, the "Phaetra entities"), willfully made multiple false statements to the NFA, the self-regulatory organization for the U.S. futures industry,[3] in statutorily required reports and during an NFA audit of the Phaetra entities. Compl. ¶¶ 7, 53-61; Consent Order ¶¶ 54-60. Park and Kaseman had registered the Phaetra entities as Commodity Pool Operators ("CPOs") with the NFA in December 2013 and January 2014. Compl. ¶¶ 23-24; Consent Order ¶¶ 17-18. Between January 2014 and June 2016 (the "reporting period"), Park filed at least 18

---

[3] The NFA is a futures association registered with the Commission pursuant to Section 17 of the Act, 7 U.S.C. § 21 (2012). Compl. ¶ 25. Membership in the NFA is mandatory for all persons and entities conducting business with the public in the U.S. futures industry, including CPOs such as the Phaetra entities during the relevant period and associated persons ("APs") of CPOs such as Park during the relevant period. *See id.* Pursuant to its official duties as a registered futures association, the NFA has developed a body of rules to safeguard market integrity, protect investors from fraud, and help futures entities and their APs meet regulatory responsibilities. *Id.* NFA members are subject to audits and investigations by the NFA to ensure compliance with NFA rules, the Act, and Regulations. *Id.*

false written reports with the NFA, representing that the Phaetra entities were not operating as CPOs during the reporting period. Compl. ¶ 55; Consent Order ¶ 55. Park also made multiple false statements to the NFA during a routine, on-site examination of the activities of the Phaetra entities in order to conceal her fraud. Compl. ¶¶ 7, 58-61; Consent Order ¶¶ 56-60. On behalf of the Phaetra entities, Park falsely represented both verbally and in writing that i) neither of the Phaetra entities conducted business of any kind, and ii) neither of the Phaetra entities, nor Park, currently managed any third-party accounts. Compl. ¶¶ 58-59; Consent Order ¶¶ 57-60. Park also falsely stated that her personal trading account at Interactive Brokers consisted of personal funds only and did not contain third-party or customer funds. Compl. ¶ 60; Consent Order ¶ 59.

## II.   ARGUMENT

A.   <u>The Facts Warrant Entry of Restitution Against Park Defendants</u>

Section 6c of the Commodity Exchange Act ("Act" or "CEA") permits the Commission to seek equitable remedies for violations of the Act, including "restitution to persons who have sustained losses proximately caused by such violation (in the amount of such losses)." 7 U.S.C. § 13a-1(d)(3)(A) (2012). The Court "has complete authority" to require defendants "to make restitution for [defendants'] violation of the Act, in addition to pre- and post-judgment interest." *CFTC v. Rolando*, 589 F. Supp. 2d 159, 173 (D. Conn. 2008) (ordering defendants to pay restitution for false statements in connection with commodity futures trading).

Proximate causation exists where the "unlawful conduct caused the economic harm". *AUSA Life Ins. Co. v. Ernst and Young*, 206 F.3d. 202, 209 (2d Cir. 2000); *see also Glidepath Holding B.V. v. Spherion Corp.*, 590 F. Supp. 2d 435, 457 (S.D.N.Y. 2007) ("To establish loss causation a plaintiff must show, that the economic harm . . . *occurred as a result* of the alleged misrepresentations."). There can be no dispute that Park Defendants' misrepresentations caused

5

the economic harms suffered by investors in the Park Pool. Park Defendants made material misrepresentations and omissions in order to induce investors to invest funds in the Park Pool, and created and sent false account statements designed to prevent investors from becoming aware of their losses. Compl. ¶¶ 30-31, 41-42; Consent Order ¶¶ 29-30, 40-41. As a result, investors entrusted their funds with the Park Pool and maintained their investments. Compl. ¶¶ 30-31, 41-42; Consent Order ¶¶ 29-30, 40-41. Thus, the Commission is entitled to seek restitution from Park Defendants. 7 U.S.C. § 13a-1(d)(3)(A) (2012).

The Commission may seek, and this Court may grant, restitution "in the amount of . . . losses" sustained by the victims of Park's fraud. 7 U.S.C. § 13a-1(d)(3)(A) (2012). "[R]estitution . . . is measured by the amount invested by customers less any refunds made by the defendants." *CFTC v. Brockbank*, 505 F. Supp. 2d 1169, 1175 (D. Utah 2007) (quotation marks and citation omitted). *See also CFTC v. Leben*, No. 3:14 Civ. 866 (TLW), 2016 WL 7354359, at *9 (D.S.C. Aug. 5, 2016) ("[R]estitution is determined by calculating the total amount of funds solicited from victims of the fraud by a defendant, less any funds returned to the victims by defendant.").

Park Defendants solicited $23,186,860 from investors. On May 30, 2016, Park's personal trading account was worth only $196,000. The total loss to participants in the Park Pool is therefore $22,990,860.[4] However, in light of the Order of Restitution issued in the parallel criminal action, where Park (but not the Corporate Defendants) is required to pay restitution of $22,912,796, the Commission requests that the Court order the Park Defendants to pay restitution on a joint-and-several basis in the same amount, plus post-judgment interest thereon, to be offset by any restitution Park makes in *United States v. Park*.

    B.    <u>The Facts Warrant Imposing a Significant CMP on Park Defendants</u>

---

[4] The record does not reflect whether Park Defendants have made redemptions to investors in the Park Pool. To the extent Park Defendants can show such redemptions, any restitution imposed by the Court may also be offset by the amount of redemptions made.

In light of the gravity of Park Defendants' unlawful conduct, the large monetary losses to the victims, and the long duration of the fraud, a substantial CMP is warranted. Section 6c(d)(1) of the Act provides that "the CFTC may seek and the court shall have jurisdiction to impose, on a proper showing, on any person found in the action to have committed any violation [of the Act] a civil penalty". 7 U.S.C. § 13a-1(d)(1) (2012). During the relevant period, the Act and regulations provided that the CMP shall be not more than the greater of triple the monetary gain for each violation, or $140,000 for each violation committed. *Id.*; Regulation 143.8 (a)(1)(i)(B)(4), 17 C.F.R. § 143.8 (a)(1)(i)(B)(4) (2017) (adjusting for inflation).

As set forth above, Park Defendants fraudulently solicited more than $23 million from investors. Their monetary gain from the violations was therefore $23 million, and this amount should be the baseline upon which this Court assesses the CMP. *See CFTC v. Am. Bullion Exch. ABEX Corp.* (hereinafter "*ABEX*"), No. SACV 10-01876 DOC, 2014 WL 3896023, at *18 (C.D. Cal. Aug. 7 2014) (finding in fraud case that "the total value of the investments solicited . . . is the preferred base point" for a CMP, reduced by "money distributed to investors" and other penalties already imposed); *See also CFTC v. Premium Income Corp.*, No. Civ. A. 3:05VC0416B, 2007 WL 429092, at *12 (N.D. Tex. Jan. 26, 2007) (imposing a CMP that "represents triple the monetary gain as measured by triple the amount of customer funds received by [defendants], less the funds returned to customers."). Although the Act authorizes the Commission to seek "triple the monetary gain" Park Defendants received, or approximately $69 million, the Commission seeks a lower CMP of $5.22 million in consideration of the judgment and sentence Park received in the parallel criminal action.

The Second Circuit has recognized that the "the purpose of sanctions under the CEA is twofold: to further the CEA's remedial policies and to deter others in the industry from

committing similar violations." *Reddy v. CFTC*, 191 F.3d 109, 123 (2d Cir. 1999) (internal quotation marks omitted) (upholding CMP in artificial trading case). The district court "has broad discretion in fashioning an appropriate remedy that is 'rationally related to the offense charged or the need for deterrence.'" *CFTC v. Yorkshire Grp.*, No. 1:13 Civ. 5323 (AMD) (ST), 2016 WL 8256380 at *6 (E.D.N.Y. Aug. 19, 2016) (Slip Copy) (citation omitted). In assessing CMPs, courts "consider[] the general seriousness of the violation as well as any particular mitigating or aggravating circumstances that exist." *CFTC v. Wilshire Inv. Mgmt. Corp.*, 531 F.3d 1339, 1346 (11th Cir. 2008).

The seriousness of Park's violations and the absence of mitigating circumstances in this case warrant a substantial CMP. "Congress created CFTC to promote efficiency, transparency, and fairness in the commodities markets." *CFTC v. Li*, No. 15 C 5839, 2016 WL 8256392 at *9 (N.D. Ill. Dec 9, 2016). Park's fraud undermined "public trust in the markets, which Congress has set out to promote and protect." *Id.* (imposing a CMP of triple the monetary gain in fictitious sales case). Park's unlawful conduct, her false statements to investors in particular, "caused significant harm and go to the heart of the purpose of the CEA." *ABEX*, 2014 WL 3896023 at *18. Such conduct "violated core provisions of the Act's regulatory system". *JCC Inc. v. CFTC*, 63 F.3d 1557, 1571 (11th Cir. 1995) (imposing a CMP for misrepresentations to customers) (quoting *In re Premex, Inc.,* [1987-1990 Transfer Binder] Comm. Fut. L. Rep. (CCH) ¶ 24,165 at 34,892 to 34,893 (CFTC Feb. 17, 1988) (emphasis omitted).); *see also CFTC v. SK Madison Commodities*, No. 1:14 Civ. 02025 (SHS), 2014 WL 3887755 at *5 (S.D.N.Y. June 9, 2014) (finding commodity pool fraud defendants to have committed "repeated violations of core provisions of the CEA and Regulations"). Imposing a substantial civil penalty on Park's violations would "go[] to the heart of the regulatory purpose – preventing the type of fraud in

which [she] repeatedly and continuously engaged." *Brockbank*, 505 F. Supp. 2d at 1177 (imposing "the highest possible civil fine" against defendant for investor fraud, misappropriation, and other misconduct).

The number of victims in this case, and the large losses they sustained as a result of Park's fraud, weigh in favor of a serious penalty. Park's fraud involved more than 50 victims and more than $23 million dollars. "Courts and the CFTC have found that a high civil monetary penalty is warranted where customers have been defrauded of a substantial amount of money." *CFTC v. Driver*, 877 F. Supp. 2d 968, 982 (C.D. Cal. 2012) (imposing a CMP of $31.8 million in a $14.3 million commodity pool Ponzi scheme case). *See also SK Madison Commodities*, 2014 WL 3887755 at *5 (finding that "[s]ignificant civil monetary penalties are warranted" in $1.3 million commodity pool fraud and imposing a $2.4 million CMP).

The length of time during which Park perpetrated her fraud and avoided detection also weighs in favor of a substantial penalty. Far from committing a few isolated acts, Park deliberately and repeatedly deceived and defrauded investors continuously for more than six years. She went to great lengths to conceal and further her fraud, through repeated verbal and written misrepresentations, multiple fake account statements and reports, and numerous false statements to NFA auditors. *See JCC*, 63 F.3d at 1571 (finding no mitigating factors where defendants "knowingly and repeatedly" committed violations of the Act, which "directly harmed" futures trading customers.). Such a pattern of conduct suggests a high level of premeditation and sophistication. Under these circumstances, only a significant CMP would "deter others in the industry from committing similar violations". *Reddy*, 191 F.3d at 123.

A $5.22 million CMP is approximately 23% of the $23 million monetary gain at issue in this case and approximately three times the amount – or $1.74 million – that Park

misappropriated for her personal expenses. Such a CMP is in line with, or lower than, CMPs imposed by courts in similar circumstances. *See, e.g. Driver*, 877 F. Supp. 2d at 982-83 (CMP of $31.8 million for $14.3 million fraud); *CFTC v. 4x Solutions*, No. 13 Civ. 2287 (RMB)(FM), 2015 WL 9943241 at *4 (S.D.N.Y. Dec. 28, 2015), Report and Recommendation adopted, 2016 WL 397672 (S.D.N.Y. Jan. 29, 2016) (CMP of $8.2 million for $4.8 million fraud); *CFTC v. Kim*, No. 11 Civ. 1013 (DLC), 2011 WL 1642772 at * 8 (S.D.N.Y. Apr. 15, 2011) (CMP of $9.3 million for $3.1 million fraud); *ABEX*, 2014 WL 3896023 at *18(CMP of $3.4 million for $4.9 million fraud); *SK Madison Commodities*, 2014 WL 3887755 at *5 (CMP of $2.5 million for $830,000 fraud); *CFTC v. Capital Blu Mgmt.*, No. 6:09-cv-508-Orl-28DAB, 2011 WL 2357629, at **8-11 (M.D. Fla. June 9, 2011) (CMP of $4.9 million for $2.4 million fraud).

In sum, a CMP of $5,220,000 is "rationally related to the offense" and commensurate with the egregiousness of Park Defendants' unlawful conduct. Imposing such a CMP would also achieve the regulatory aims of the Act for deterring similar fraud with a high level of sophistication and large-scale harm. The Commission respectfully requests that the Court enter the proposed Supplemental Order imposing such a CMP on the Park Defendants.

### III.   CONCLUSION

For the foregoing reasons, the Commission respectfully requests that the Court grant the Commission's Motion and enter a supplemental order: 1) ordering Park Defendants to pay, jointly and severally, restitution in the amount of $22,912,796, to be offset by the amount of restitution paid by Park pursuant to the Order of Restitution in *United States v. Park*; and 2) imposing a CMP of $5,220,000 against Park Defendants jointly and severally. Such relief is appropriate in light of Park Defendants' fraud, improper business conduct, and multiple false statements to the NFA that concealed their fraud throughout the relevant period.

| | |
|---|---|
| Dated: March 9, 2018 | Respectfully submitted, |
| | s/Greta Gao |
| | Greta G. Gao (*pro hac vice*) |
| | Luke B. Marsh (*pro hac vice*) |
| | U.S. Commodity Futures Trading Commission |
| | Division of Enforcement |
| | 1155 21st Street, NW |
| | Washington, DC 20581 |
| | Tel: (202) 418-5000 |
| | Fax: (202) 418-5937 |
| | ggao@cftc.gov |
| | lmarsh@cftc.gov |
| | |
| | Attorneys for Plaintiff |