UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
                                                          :

U.S. COMMODITY FUTURES
TRADING COMMISSION,

           Plaintiff,

                       16-CV-4120 (VEC)

         -against-

HAENA PARK, YUL KASEMAN,
PHAETRA CAPITAL GP LLC a/k/a
ARGENTA CAPITAL GP LLC,
PHAETRA CAPITAL MANAGEMENT
LP a/k/a ARGENTA CAPITAL LLC, and
ARGENTA GROUP LLC,

           Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

**[PROPOSED] SUPPLEMENTAL ORDER OF STATUTORY AND EQUITABLE RELIEF AGAINST HAENA PARK, PHAETRA CAPITAL GP LLC, PHAETRA CAPITAL MANAGEMENT LP, AND ARGENTA GROUP LLC**

On June 2, 2016, Plaintiff Commodity Futures Trading Commission ("Commission" or "CFTC") filed a Complaint ("Complaint") against Haena Park ("Park"), Yul Kasemen ("Kaseman"), Phaetra Capital GP LLC ("Phaetra GP"), Phaetra Capital Management LP ("Phaetra Management"), and Argenta Group LLC ("Argenta", and, collectively with Phaetra GP and Phaetra Management, "Corporate Defendants") seeking injunctive and other equitable relief, as well as the imposition of civil penalties, for violations of the Commodity Exchange Act ("Act"), 7 U.S.C. §§ 1-26 (2012), and the Commission's Regulations ("Regulations") promulgated thereunder, 17 C.F.R. § 1.1 et seq. (2017). ECF No. 1.

On July 8, 2016, Park was charged in a two-count indictment in the Southern District of New York, alleging wire fraud and commodities fraud in connection with Park's fraudulent

1

trading scheme. *United States v. Park*, No. 1:16-cr-00473 (S.D.N.Y. filed July. 8, 2016) ("Criminal Action"). On January 13, 2017, Park pleaded guilty to one count of commodities fraud in the Criminal Action, and she was sentenced on July 11, 2017.

On February 7, 2018, this Court entered a Consent Order for Permanent Injunction and Other Relief Against Haena Park, Phaetra Capital GP LLC, Phaetra Capital Management LP, and Argenta Group LLC ("Consent Order"). ECF No. 50. The Consent Order resolved and settled all liability claims against Park and Corporate Defendants (collectively, "Park Defendants') as to each count of the Complaint and entered a permanent trading and registration ban in markets supervised by the Commission. *See* Consent Order at ¶¶ 63-98. The issues of necessary statutory relief pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1 (2012), as well as appropriate equitable relief, including the amount of restitution and a civil monetary penalty ("CMP") to be assessed against the Park Defendants were reserved for further determination by this Court. *Id.* at ¶¶ 99-102.

This matter is before the Court on the Commission's Motion for a Supplemental Order of Statutory and Equitable Relief Against Haena Park, Phaetra Capital GP LLC, Phaetra Capital Management LP, and Argenta Group LLC. ECF No. 53. The Court has considered the Motion, Memorandum of Law filed in support thereof, and all other papers filed in connection with the Commission's Motion. For good cause having been shown, the Commission's Motion is **GRANTED** and the Court hereby supplements the Consent Order as follows:

## I.
## FINDINGS OF FACT AND CONCLUSIONS OF LAW

1. As provided in the Consent Order, facts alleged in the Complaint and the Findings of Fact and Conclusions of Law contained in the Consent Order are deemed true for purposes of

this Order and are incorporated herein by reference. Consent Order ¶ 102. Such facts include the following:

2. From at least January 2010 through June 2016 (the "Relevant Period"), Park, as the control person for the Corporate Defendants, fraudulently solicited and accepted $23,186,860 from more than 50 individuals ("pool participants") to participate in an unregistered commodity pool in Park's personal trading account (the "Park Pool") to trade foreign exchange ("forex") and futures contracts. Compl. ¶ 26; Consent Order ¶ 20.

3. At Park's instruction, pool participants wired funds directly to personal bank accounts held in Park's name at Bank of America, J.P. Morgan and Citibank (collectively, "Park Personal Bank Accounts"), as well as an account at Citibank held in the name of Argenta Group LLC controlled by Park ("Argenta Bank Account"). Of the more than $23 million wired by the pool participants, Park transferred approximately $21.5 million into Park's personal trading account at Interactive Brokers (the "IB Trading Account"). She misappropriated the rest of the funds, or approximately $1.74 million. The funds transferred to the IB Trading Account were used to effect futures and forex transactions. Park also withdrew a total of approximately $1.83 million from the IB Trading Account. Consent Order ¶ 27.

4. Park lost approximately $19.26 million through trading, and hid the losses from pool participants. Consent Order ¶ 21.

5. At all relevant times, Park was the sole signatory on the Park Personal Bank Accounts and the Argenta Bank Account. She was also the sole person authorized to trade in the IB Trading Account. Accordingly, at all relevant times Park had personal knowledge of the total amount of funds accepted by the Park Pool from pool participants, the disposition of those funds, as well as the number of trades effected on behalf of pool participants and the date each trade

was made. As reflected in the daily activity statements for the IB Trading Account, Park actively traded commodity futures and forex each month throughout the Relevant Period. Compl. ¶ 29; Consent Order ¶ 28.

6. Park represented to prospective pool participants that they were investing in a pooled "friends and family" fund run by Phaetra GP, Phaetra Management, or their predecessors and affiliates, rather than an unregistered commodity pool run out of the IB Trading Account. When Park made solicitations from prospective pool participants, she furnished them with charts purporting to contain actual positive performance data over the preceding months. In truth, the charts contained fabricated data. At all relevant times, the Park Pool suffered heavy losses and declined steeply in value due to Park's trading. Park never disclosed these losses to the existing and prospective pool participants. Compl. ¶ 31; Consent Order ¶ 30.

7. Park, on behalf of the Corporate Defendants, also falsely and fraudulently represented to pool participants that the Park Pool was continuing to make a profit, when in reality the Park Pool was losing money. Park, on behalf of the Corporate Defendants, knowingly distributed false account statements and performance reports to pool participants that represented that the Park Pool was earning profits during a period where no profits were made. Compl. ¶¶ 41, 42; Consent Order ¶¶ 22, 40, 41.

8. Park, individually and as the agent of Argenta Capital LLC ("Argenta Capital"), also made material misrepresentations and omissions regarding her trading expertise, profits, and the track record and performance of the Park Pool to employees and officers of an investment firm based in Louisville, Kentucky ("Investment Firm A"). Park knowingly made misrepresentations in order to fraudulently induce Investment Firm A to hire herself and Argenta Capital to manage Investment Firm A's funds as a CTA. Compl. ¶ 47; Consent Order ¶ 48.

9. Park falsely and fraudulently represented that she was currently trading $4.5 million of personal funds and "friends and family" money in commodity futures and forex accounts. Park also falsely represented that she had begun investing with $1 million of her own money in 2009, and had grown her initial investment to $3 million by January 2013. Compl. ¶ 49; Consent Order ¶ 48.

10. As a result of Park's misrepresentations and omissions, on or about February 22, 2013, Investment Firm A entered into a Trading Advisor Agreement with Park, as the agent and manager of Argenta Capital, to manage a fund ("Master Fund") for the firm. Compl. ¶ 51; Consent Order ¶ 50.

11. During the course of Park's management, the Master Fund suffered trading losses of more than $1.9 million. Due to poor performance, Investment Firm A terminated its relationship with Park and Argenta Capital on or about May 27, 2014. At the time of her departure, Park had been paid a total of approximately $146,238 in management and performance fees. Compl. ¶ 52; Consent Order ¶ 51.

12. Park, individually and as the agent of Phaetra GP and Phaetra Management (collectively "Phaetra entities"), also made multiple false or misleading statements to the National Futures Association ("NFA") in statutorily required reports filed between January 2014 and June 2016 (the "reporting period"), and during an April 2016 NFA audit of the Phaetra entities. Compl. ¶ 54; Consent Order ¶ 54.

13. Park and Kaseman had registered the Phaetra entities as Commodity Pool Operators ("CPOs") with the NFA in December 2013 and January 2014. Compl. ¶¶ 23-24; Consent Order ¶¶ 17-18.

14. The NFA is a futures association registered with the Commission pursuant to Section 17 of the Act, 7 U.S.C. § 21 (2012). Membership in the NFA is mandatory for all persons and entities conducting business with the public in the U.S. futures industry, including CPOs such as the Phaetra entities during the relevant period and associated persons ("APs") of CPOs such as Park during the relevant period. Pursuant to its official duties as a registered futures association, the NFA has developed a body of rules to safeguard market integrity, protect investors from fraud, and help futures entities and their APs meet regulatory responsibilities. NFA members are subject to audits and investigations by the NFA to ensure compliance with NFA rules, the Act, and Regulations. Compl. ¶ 25; Consent Order ¶ 52.

15. Between May 20, 2014 and June 2016, Park, on behalf of the Phaetra entities, filed or caused to file at least 18 false written reports with the NFA, falsely representing that the Phaetra entities had not begun operating as Commodity Pool Operators during the reporting period. Park also made numerous misrepresentations and material omissions regarding her own trading activities and the activities of the Phaetra entities during an April 2016 NFA on-site examination of the Phaetra entities. Compl. ¶¶ 55-61; Consent Order ¶¶ 55-60.

## II.
## RESTITUTION

**IT IS HEREBY ORDERED THAT:**

16. The Park Defendants shall pay, on a joint and several basis, restitution in the amount of twenty-two million, nine hundred and twelve thousand, seven hundred and ninety-six dollars ($22,912,796.00), less amounts paid in restitution in the Criminal Action, plus post-judgment interest ("Restitution Obligation"). Post-judgment interest shall accrue on the Restitution Obligation beginning on the date of entry of this Order and shall be determined by using the Treasury Bill rate prevailing on the date of entry of this Order pursuant to 28 U.S.C.

6

§ 1961 (2012). Within ten (10) days of disbursement in the Criminal Action to pool participants, the Park Defendants shall, under a cover letter that identifies the name and docket number of this proceeding, transmit to the Chief Financial Officer, Commodity Futures Trading Commission, Three Lafayette Centre, 1155 21st Street, N.W., Washington, D.C. 20581, and the Office of Administration, National Futures Association, 300 South Riverside Plaza, Suite 1800, Chicago, Illinois 60606, copies of the form of payment to those pool participants.

17. To effect payment of the Restitution Obligation and the distribution of any restitution payments to the pool participants, the Court appoints the NFA as Monitor ("Monitor"). The Monitor shall receive restitution payments from the Park Defendants and make distributions as set forth below. Because the Monitor is acting as an officer of this Court in performing these services, the NFA shall not be liable for any action or inaction arising from NFA's appointment as Monitor, other than actions involving fraud.

18. The Park Defendants shall make Restitution Obligation payments under this Order to the Monitor in the name "Phaetra Capital/Restitution Fund" and shall send such Restitution Obligation payments by electronic funds transfer, or by U.S. postal money order, certified check, bank cashier's, or bank money order, to the Office of Administration, National Futures Association, 300 South Riverside Plaza, Suite 1800, Chicago, Illinois 60606 under cover letter that identifies the paying Park Defendants and the name and docket number of this proceeding. The Park Defendants shall simultaneously transmit copies of the cover letter and the form of payment to the Chief Financial Officer, Commodity Futures Trading Commission, Three Lafayette Centre, 1155 21st Street, N.W., Washington, D.C. 20581.

19. The Monitor shall oversee the Restitution Obligation and shall have the discretion to determine the manner of distribution of such funds in an equitable fashion to the pool

participants identified by the CFTC or may defer distribution until such time as the Monitor deems appropriate. In the event that the amount of Restitution Obligation payments to the Monitor are of a *de minimis* nature such that the Monitor determines that the administrative cost of making a distribution to eligible pool participants is impractical, the Monitor may, in its discretion, treat such restitution payments as civil monetary penalty payments, which the Monitor shall forward to the CFTC by electronic funds transfer, U.S. postal money order, certified check, bank cashier's check, or bank money order. If payment is to be made other than by electronic funds transfer, then the payment shall be made payable to the Commodity Futures Trading Commission and sent to the address below:

> Commodity Futures Trading Commission
> Division of Enforcement
> ATTN: Accounts Receivables
> DOT/FAA/MMAC/AMZ-341
> CFTC/CPSC/SEC
> 6500 S. MacArthur Blvd.
> Oklahoma City, OK 73169
> (405) 954-7262 office
> (405) 954-1620 fax
> nikki.gibson@faa.gov

If payment by electronic funds transfer is chosen, the Park Defendants shall contact Nikki Gibson or her successor at the address above to receive payment instructions and shall fully comply with those instructions. The Park Defendants shall accompany payment of the Restitution Obligation with a cover letter that identifies the Park Defendants and the name and docket number of this proceeding. The Park Defendants shall simultaneously transmit copies of the cover letter and the form of payment to the Chief Financial Officer, Commodity Futures Trading Commission, Three Lafayette Centre, 1155 21st Street, N.W., Washington, D.C. 20581.

20. The Park Defendants shall cooperate with the Monitor as appropriate to provide such information as the Monitor deems necessary and appropriate to identify the pool participants

8

to whom the Monitor, in its sole discretion, may determine to include in any plan for distribution of any Restitution Obligation payments. The Park Defendants shall execute any documents necessary to release funds that they have in any repository, bank, investment or other financial institution, wherever located, in order to make partial or total payment toward the Restitution Obligation.

21. The Monitor shall provide the CFTC at the beginning of each calendar year with a report detailing the disbursement of funds to the pool participants during the previous year. The Monitor shall transmit this report under a cover letter that identifies the name and docket number of this proceeding to the Chief Financial Officer, Commodity Futures Trading Commission, Three Lafayette Centre, 1155 21st Street, N.W., Washington, D.C. 20581.

22. The amounts payable to each pool participant shall not limit the ability of any pool participant from proving that a greater amount is owed from the Park Defendants or any other person or entity, and nothing herein shall be construed in any way to limit or abridge the rights of any pool participant that exist under state or common law.

23. Pursuant to Rule 71 of the Federal Rules of Civil Procedure, each pool participant who suffered a loss is explicitly made an intended third-party beneficiary of this Order and may seek to enforce obedience of this Order to obtain satisfaction of any portion of the restitution that has not been paid by the Park Defendants to ensure continued compliance with any provision of this Order and to hold the Park Defendants in contempt for any violations of any provision of this Order.

### III.
### CIVIL MONETARY PENALTY

**IT IS FURTHER ORDERED THAT:**

10. The Park Defendants shall pay, jointly and severally, a CMP in the amount of five million, two hundred and twenty thousand dollars ($5,220,000), plus post-judgment interest. Such a CMP represents triple the amount of $1.74 million that Park misappropriated from pool defendants. The Court finds that such a CMP is necessary and appropriate in light of the gravity of the Park Defendants' unlawful conduct and the need to deter others in the industry from committing similar violations. Post-judgment interest shall accrue on the CMP beginning on the date of entry of this Order and shall be determined by using the Treasury Bill rate prevailing on the date of entry of this Order pursuant to 28 U.S.C. § 1961 (2012).

11. The Park Defendants shall pay their CMP by electronic funds transfer, U.S. postal money order, certified check, bank cashier's check, or bank money order. If payment is to be made other than by electronic funds transfer, then the payment shall be made payable to the Commodity Futures Trading Commission and sent to the address below:

> Commodity Futures Trading Commission
> Division of Enforcement
> ATTN: Accounts Receivables
> DOT/FAA/MMAC/AMZ-341
> CFTC/CPSC/SEC
> 6500 S. MacArthur Blvd.
> Oklahoma City, OK 73169
> Telephone: (405) 954-7262
> Fax: (405) 954-1620
> nikki.gibson@faa.gov

If payment by electronic funds transfer is chosen, the Park Defendants shall contact Nikki Gibson or her successor at the address above to receive payment instructions and shall fully comply with those instructions. The Park Defendants shall accompany payment of the CMP with a cover letter that identifies the Park Defendants and the name and docket number of this proceeding. The Park Defendants shall simultaneously transmit copies of the cover letter and the

form of payment to the Chief Financial Officer, U.S. Commodity Futures Trading Commission, Three Lafayette Centre, 1155 21st Street, NW, Washington, D.C. 20581.

12. Partial Satisfaction: Acceptance by the Commission of any partial payment of the Park Defendants' CMP shall not be deemed a waiver of their obligation to make further payments pursuant to this Order, or a waiver of the Commission's right to seek to compel payment of any remaining balance.

13. Change of Address/Phone: Until such time as the Park Defendants satisfy in full their CMP as set forth in this Order, the Park Defendants shall provide written notice to the Commission by certified mail of any change to his telephone number and mailing address within ten (10) calendar days of the change.

## IV.
## MISCELLANEOUS PROVISIONS

**IT IS FURTHER HEREBY ORDERED THAT:**

14. This Order supplements the Consent Order and the Consent Order remains in full force and effect.

**IT IS SO ORDERED** on this _____ day of _____, 2018.

_____
VALERIE E. CAPRONI
United States District Judge