```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
                                                  :
U.S. COMMODITY FUTURES                            :
TRADING COMMISSION,                               :
                                                  :
                 Plaintiff,                       :
                                                  :
        -against-                                 :   16-CV-4120 (VEC)
                                                  :
HAENA PARK, YUL KASEMAN,                          :
PHAETRA CAPITAL GP LLC a/k/a                      :
ARGENTA CAPITAL GP LLC,                           :
PHAETRA CAPITAL MANAGEMENT                        :
LP a/k/a ARGENTA CAPITAL LLC, and                 :
ARGENTA GROUP LLC,                                :
                                                  :
                 Defendants.                      :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 4/23/2018

### CONSENT ORDER FOR PERMANENT INJUNCTION, CIVIL MONETARY PENALTY AND OTHER EQUITABLE RELIEF AGAINST YUL KASEMAN

On June 2, 2016, Plaintiff United States Commodity Futures Trading Commission ("Commission" or "CFTC") filed a Complaint ("Complaint") against Yul Kasemen ("Kaseman" or "Settling Defendant"), Haena Park ("Park"), Phaetra Capital GP LLC ("Phaetra GP"), Phaetra Capital Management LP ("Phaetra Management" and, together with Phaetra GP, "Phaetra entities"), and Argenta Group LLC ("Argenta", and, collectively with the Phaetra entities, "Corporate Defendants") seeking injunctive and other equitable relief, as well as the imposition of civil penalties, for violations of the Commodity Exchange Act ("Act"), 7 U.S.C. §§ 1-26 (2012), and the Commission's Regulations ("Regulations") promulgated thereunder, 17 C.F.R. § 1.1 *et seq.* (2017).

On July 8, 2016, Park was charged in a two-count indictment in the Southern District of New York, alleging wire fraud and commodities fraud in connection with Park's fraudulent trading scheme. *United States v. Park*, No. 1:16-cr-00473 (S.D.N.Y. filed July. 8, 2016). The

1

instant case was stayed by this Court on July 13, 2016, pending the outcome of Park's related criminal case in New York **(#20)**. On January 13, 2017, Park pleaded guilty to one count of commodities fraud, and she was sentenced on July 11, 2017. The Court lifted the stay in this case on July 19, 2017 **(#30)**.

## I. CONSENTS AND AGREEMENTS

To effect partial settlement of this action against Settling Defendant, without a trial on the merits or any further judicial proceedings, the Settling Defendant:

1. Consents to the entry of this Consent Order for Permanent Injunction, Civil Monetary Penalty and Other Equitable Relief Against Yul Kaseman ("Consent Order");

2. Affirms that she has read and agreed to this Consent Order voluntarily, and that no promise, other than as specifically contained herein, or threat, has been made by the CFTC or any member, officer, agent or representative thereof, or by any other person, to induce consent to this Consent Order;

3. Acknowledges service of the summons and Complaint;

4. Admits to the jurisdiction of this Court over her and the subject matter of this action pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1 (2012);

5. Admits to the jurisdiction of the CFTC over the conduct and transactions at issue in this action pursuant to the Act, 7 U.S.C. §§ 1-26 (2012);

6. Admits that venue properly lies with this Court pursuant to Section 6c(e) of the Act, 7 U.S.C. § 13a-1(e) (2012);

7. Waives:

(a) Any and all claims that she may possess under the Equal Access to Justice Act, 5 U.S.C. § 504 (2012) and 28 U.S.C. § 2412 (2012), and/or the rules promulgated by the CFTC in conformity therewith, Part 148 of the Regulations, 17 C.F.R. §§ 148.1-148.30 (2017), relating

2

to, or arising from, this action;

(b)     Any and all claims that she may possess under the Small Business Regulatory Enforcement Fairness Act of 1996, Pub. L. No. 104-121, §§ 201-253, 110 Stat. 847, 857-868 (1996), as amended by Pub. L. No. 110-28, § 8302, 121 Stat. 112, 204-205 (2007), relating to, or arising from, this action;

(c)     Any claims of Double Jeopardy based upon the institution of this action or the entry in this action of any order imposing a civil monetary penalty or any other relief, including this Consent Order; and

(d)     Any and all rights of appeal from this action.

8.      Consents to the continued jurisdiction of this Court over her for the purpose of implementing and enforcing the terms and conditions of this Consent Order and for any other purpose relevant to this action, even if she now or in the future resides outside the jurisdiction of this Court;

9.      Agrees that she will not oppose enforcement of this Consent Order by alleging that it fails to comply with Rule 65(d) of the Federal Rules of Civil Procedure and waives any objection based thereon;

10.     Agrees that neither she nor any of her agents or employees under her authority or control shall take any action or make any public statement denying, directly or indirectly, any allegation in the Complaint or the Findings of Fact or Conclusions of Law in this Consent Order, or creating or tending to create the impression that the Complaint or this Consent Order is without a factual basis; provided, however, that nothing in this provision shall affect her:  (a) testimonial obligations, or (b) right to take legal positions in other proceedings to which the CFTC is not a party.  Kaseman shall undertake all steps necessary to ensure that all of her agents or employees under her authority or control understand and comply with this agreement;

3

11. By consenting to the entry of this Consent Order, Kaseman neither admits nor denies the allegations of the Complaint or the Findings of Fact and Conclusions of Law in this Consent Order, except as to jurisdiction and venue, which she admits. Further, Kaseman agrees and intends that the allegations contained in the Complaint and all of the Findings of Fact and Conclusions of Law contained in this Consent Order shall be taken as true and correct and be given preclusive effect, without further proof, in the course of: (a) any current or subsequent bankruptcy proceeding filed by, on behalf of, or against Kaseman; (b) any proceeding pursuant to Section 8a of the Act, 7 U.S.C. § 12a (2012), and/or Part 3 of the Regulations, 17 C.F.R §§ 3.1 – 3.75 (2014); and/or (c) any proceeding to enforce the terms of this Consent Order;

12. Agrees to provide immediate notice to this Court and the CFTC by certified mail, in the manner required by Paragraph 47 of Part V. of this Consent Order, of any bankruptcy proceeding filed by, on behalf of, or against Kaseman, whether inside or outside the United States;

13. Agrees that no provision of this Consent Order shall in any way limit or impair the ability of any other person or entity to seek any legal or equitable remedy against Kaseman in any other proceeding; and

14. Consents to pay a civil monetary penalty, plus post-judgment interest, in an amount of seventy five thousand dollars ($75,000) as described in more detail in Section IV below.

## II. FINDINGS OF FACT AND CONCLUSIONS OF LAW

15. The Court, being fully advised in the premises, finds that there is good cause for the entry of this Consent Order and that there is no just reason for delay. The Court therefore directs the entry of the following Findings of Fact, Conclusions of Law, permanent injunction and equitable relief pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1 (2012), as set forth

4

herein. The Findings and Conclusions in this Consent Order are not binding on any other party to this action. Nothing in the Findings and Conclusions in this Consent Order may be used to establish, reduce, increase, eliminate or in any way affect the liability of any of the remaining Defendants in this action who are not parties to this Consent Order.

**THE PARTIES AGREE AND THE COURT HEREBY FINDS:**

A.   **Findings of Fact**

### The Parties and Relevant Entities

16.   Plaintiff United States Commodity Futures Trading Commission is an independent federal regulatory agency charged by Congress with the administration and enforcement of the Act and the Commission Regulations promulgated thereunder. The Commission maintains its principal office at 1155 21st Street NW, Washington, DC 20581.

17.   Defendant Yul Kaseman, a/k/a Yul Chung or Yul Chung Kaseman, is one of the principals of the Phaetra entities. Kaseman was the Chief Compliance Officer and Chief Operating Officer of the Phaetra entities and responsible for the required periodic public filings and day-to-day operations of the two entities. From January 2010 through June 2016 (the "Relevant Period") Kaseman resided and worked in New York, New York. Kaseman is registered with the Commission as an Associated Person ("AP") of the Phaetra entities but has never been registered in any other capacity with the Commission.

18.   Defendant Haena Park is a founder of Phaetra Capital GP LLC, previously operating under the name of Argenta Capital GP LLC, and Phaetra Management. Park is also the President and Chairperson of Argenta Group LLC. During the Relevant Period, Park resided in New York, New York, and worked in New York, New York. Park is registered with the Commission as an AP of the Phaetra entities but has never been registered in any other capacity with the Commission.

19. Defendant Phaetra Capital GP LLC is a Delaware limited liability company with its principal place of business listed as New York, New York. Phaetra GP was incorporated as Argenta Capital GP LLC in 2010 and renamed Phaetra Capital GP LLC on or about September 2013. Park and Kaseman are the principals and sole employees of Phaetra GP and Phaetra Management, and control Phaetra GP's and Phaetra Management's operations, finances, accounts, and books and records. Park is the Chief Investment Officer and Managing Partner of Phaetra GP. Phaetra GP has been registered as a Commodity Pool Operator (CPO)[1] from January 2014 through the present.

20. Defendant Phaetra Capital Management LP is a Delaware limited partnership with its principal place of business listed as New York, New York. Phaetra Management was designated as "successor-in-interest" of Argenta Capital Management LLC, also founded by Park, on or about September 2013. Park is the Chief Investment Officer and Managing Partner of Phaetra Management. Phaetra Management has been registered as a CPO from December 2013 through the present.

21. Defendant Argenta Group LLC is a New York limited liability company with its principal place of business listed as New York, New York. Argenta was incorporated in

---

[1] A "commodity pool operator" ("CPO") means "any person—

(i) engaged in a business that is the nature of a commodity pool, investment trust, syndicate, or similar form of enterprise, and who, in connection therewith, solicits, accepts, or receives from others, funds, securities, or property, either directly or through capital contributions, the sale of stock or other forms of securities, or otherwise, for the purpose of trading in commodity interests, including any—

   (I) commodity for future delivery, security futures product, or swap; . . . or

(ii) who is registered with the Commission as a commodity pool operator."

Section 1a(11) of the Act, 7 U.S.C. §1a(11) (2012).

6

2010. Park is listed as the president and chairperson of Argenta. Argenta has never been registered as a CPO or Commodity Trading Advisor ("CTA")[2] with the Commission.

22. The National Futures Association ("NFA") is a futures association registered with the Commission pursuant to Section 17 of the Act, 7 U.S.C. § 21 (2012). Membership in the NFA is mandatory for all persons and entities conducting business with the public in the U.S. futures industry, including CPOs and APs of CPOs. Pursuant to its official duties as a registered futures association, the NFA has developed a body of rules to safeguard market integrity, protect investors from fraud, and help futures entities and their APs meet regulatory responsibilities. NFA members are subject to audits and investigations by the NFA to ensure compliance with NFA rules, the Act, and Commission Regulations. Cooperation and candor by NFA members with NFA compliance and audit staff are critical to the NFA's ability to discharge its obligations as a registered futures association to, among other things, protect members of the public from persons or entities unlawfully soliciting customers, accepting customer orders, or exercising trading discretion on behalf of customers.

## Operation of the Park Pool

23. From at least January 2010 through the filing of this action in June 2016, Park and the Corporate Defendants fraudulently solicited at least $23 million from members of the public to participate in a commodity pool (the "Park Pool") that traded various futures contracts, as well as leveraged or margined retail off-exchange foreign currencies, the latter contracts commonly known as "forex".

---

[2] A "commodity trading advisor" ("CTA") means "any person who—
(i) for compensation or profit, engages in the business of advising others, either directly or through publications, writings, or electronic media, as to the value of or the advisability of trading in—
   (I) any contract of sale of a commodity for future delivery, security futures product, or swap; . . ."
Section 1a(12) of the Act, 7 U.S.C. §1a(12) (2012).

7

24. Park started the Park Pool as a personal trading account at Interactive Brokers ("IB Trading Account") in November 2008. Beginning in January 2010, Park began soliciting funds from prospective investors ("pool participants") and induced pool participants to transfer funds via wire into bank accounts in her own name and in the name of Argenta. By May 31, 2016, approximately 50 pool participants – including Kaseman – had transferred more than $23 million to bank accounts controlled by Park.

25. During the Relevant Period, the Park Pool consistently suffered heavy losses through Park's trading. The pool declined in value in 74 out of the 91 months it had operated, and suffered a cumulative loss of approximately $19.4 million, or 99% of the value of the pool. On May 31, 2016, the total value of the Park Pool had declined to approximately $196,000.

26. At Park's instruction, pool participants wired funds directly to personal bank accounts held in Park's name at Bank of America, J.P. Morgan and Citibank (collectively, "Park Personal Bank Accounts"), as well as an account at Citibank held in the name of Argenta controlled by Park ("Argenta Bank Account"). Park transferred the bulk of the funds wired by the pool participants into the IB Trading Account and misappropriated the remainder of the funds. The funds transferred to the IB Trading Account were used to effect futures and forex transactions.

## Material Misrepresentations to Pool Participants

27. During the Relevant Period, Park made material misrepresentations and omissions regarding her trading expertise, profits, and the track record and performance of the Park Pool when soliciting funds from prospective pool participants. Park knowingly made misrepresentations and omissions in order to fraudulently induce prospective pool participants to deposit, maintain, or increase their deposits in the Park Pool.

28. Park represented to prospective pool participants that they were investing in a pooled "friends and family" fund run by the Phaetra entities or its predecessors, rather than a commodity pool run out of the IB Trading Account. When Park made solicitations from prospective pool participants, she furnished them with charts purporting to contain actual performance data over the preceding months. In truth, the charts contained fabricated data that bore no relationship or resemblance to reality. At all relevant times, the Park Pool suffered heavy losses and declined steeply in value due to Park's trading. Park never disclosed these losses to the prospective and existing pool participants.

29. Park hid these losses from pool participants, including Kaseman. Park knowingly misrepresented to pool participants on multiple occasions that their total principal investment was intact and that trading was profitable, when Park knew this was not true. Park knowingly issued false account statements to pool participants reporting profitable earnings in the pool, when she knew that there were no such profitable earnings, and that there was instead an overall significant decrease in the net value of the pool due to the combined effect of trading losses, Park's misappropriation, and payments to some pool participants in the manner akin to a Ponzi scheme. In addition, Park omitted to tell prospective and existing pool participants (a) that she was presently losing money trading commodities and futures and had consistently lost money trading commodities and futures in the past; (b) that she traded only a portion of pool participant funds and misappropriated the remainder.

**False Statements to the NFA**

30. In furtherance of its official duties under the Act, the NFA conducts periodic audits and examinations of NFA members as a means of monitoring and assuring compliance with NFA rules, the Act, and Commission Regulations. In addition, pursuant to NFA rules, the Act, and

Commission Regulations, CPOs are required to file with the NFA quarterly financial reports for each pool the CPO operates.

31. Settling Defendant Kaseman, and Park, individually and as the agents of the registered Phaetra entities, made multiple false or misleading statements to the NFA in statutorily required reports filed between January 2014 and the present, and during an April 2016 NFA audit of the registered Phaetra entities.

32. Between May 20, 2014 and the present, the Phaetra entities, by and through its agents Kaseman and Park, filed at least 18 false written reports with the NFA. Kaseman, as the Phaetra entities' Chief Compliance Officer and Chief Operating Officer, filed the majority of these false reports with the NFA. Kaseman, who was also responsible for marketing, investor relations, and internal operational details at the Phaetra entities, knew these statements were false because she knew that Park solicited funds from pool participants as the agent of the Phaetra entities during the reporting period, and used these funds to trade forex and commodity futures contracts.

33. On March 31, 2016, after the filing of the false quarterly reports, the NFA contacted the Phaetra entities to announce a routine, on-site examination on the activities of the firms to ensure the firms were in compliance with their recordkeeping and financial requirements. Kaseman answered the call from NFA and represented to the NFA that the Phaetra entities had not conducted business in any capacity to date. Kaseman further represented that Park actively traded her personal IB Trading Account at home.

34. On April 1, 2016, Kaseman telephoned the NFA and represented once again that there was little to no activity in bank and broker accounts established for the Phaetra entities.

35. On April 4, 2016, NFA conducted an on-site examination of the Phaetra entities. During the examination, Kaseman and Park both represented that i) neither of the Phaetra entities

had commenced business of any kind; and ii) neither the Phaetra entities nor Park or Kaseman currently managed any third-party accounts.

36. Pursuant to a NFA document request issued prior to the on-site visit, the Phaetra entities, by and through Kaseman and Park, represented to the NFA on the same day of the on-site visit that the only proprietary or non-customer account maintained was Park's IB Trading Account. During the onsite meeting, the Phaetra entities both furnished the NFA with letters stating that they were not doing any business to date. The letters on behalf of the Phaetra entities state: "As of this date, we have not conducted any futures or forex business."

37. Kaseman and Park knew these statements were false because they knew that Park had solicited funds from pool participants on behalf of the Phaetra entities, and that Park had been actively traded commodity futures contracts in the IB Trading Account throughout the reporting period.

**B.  Conclusions of Law**

    **1)  Jurisdiction and Venue**

38. This Court has jurisdiction over this action pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1 (2012), which provides that, whenever it shall appear to the CFTC that any person has engaged, is engaging, or is about to engage in any act or practice constituting a violation of any provision of the Act or any rule, regulation, or order promulgated thereunder, the CFTC may bring an action in the proper district court of the United States against such person to enjoin such act or practice, or to enforce compliance with the Act, or any rule, regulation or order thereunder.

39. Venue properly lies with this Court pursuant to Section 6c(e) of the Act, 7 U.S.C. § 13a-1(e) (2012), because Kaseman resided in this jurisdiction and the acts and practices in violation of the Act occurred within this District.

    **2)  Defendant Kaseman Violated Section 9(a)(4) of the Act, 7 U.S.C. § 13(a)(4): False Statements to the NFA**

11

40. By the conduct described in paragraphs 1 through 37 above, Kaseman willfully made materially false statements to the NFA, and concealed material information from the NFA, in statutorily required reports and during oral communications with NFA staff during an NFA audit in furtherance of the NFA's official duties under the Act, in violation of Section 9(a)(4) of the Act, 7 U.S.C. § 13(a)(4) (2012).

### III. ORDER FOR PERMANENT INJUNCTION

**IT IS HEREBY ORDERED THAT:**

41. Based upon and in connection with the foregoing conduct, pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1 (2012), Kaseman is permanently restrained, enjoined and prohibited from directly or indirectly:

   a. willfully falsifying, concealing, and covering up by trick, scheme, or artifice material facts and making false writings or documents knowing the same to contain false statements to the NFA, in violation of Section 9(a)(4) of the Act, 7 U.S.C. § 13(a)(4) (2012).

42. Kaseman is also restrained, enjoined and prohibited, for a period of five years from the entry of this Consent Order, from directly or indirectly:

   a. trading on or subject to the rules of any registered entity (as that term is defined in Section 1a(40) of the Act, 7 U.S.C. § 1a(40) (2012));

   b. entering into any transactions involving "commodity interests" (as that term is defined in Regulation 1.3(yy), 17 C.F.R. § 1.3(yy) (2017)) for Kaseman's own personal account or for any account in which she has a direct or indirect interest;

   c. having any commodity interests traded on her behalf;

   d. controlling or directing the trading for or on behalf of any other person or entity, whether by power of attorney or otherwise, in any account involving commodity

12

        interests;

e.    soliciting, receiving or accepting any funds from any person for the purpose of purchasing or selling any commodity interests;

f.    applying for registration or claiming exemption from registration with the Commission in any capacity, and engaging in any activity requiring such registration or exemption from registration with the Commission, except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2017); and/or

g.    acting as a principal (as that term is defined in Regulation 3.1(a), 17 C.F.R. § 3.1(a) (2017)), agent or any other officer or employee of any person (as that term is defined in Section 1a(38) of the Act, 7 U.S.C. § 1a(38) (2012)), registered, exempted from registration or required to be registered with the Commission except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2017).

## IV. CIVIL MONETARY PENALTY

43.    Kaseman shall pay a civil monetary penalty in the amount of seventy five thousand dollars $75,000.00 ("CMP Obligation"), plus post-judgment interest. Post-judgment interest shall accrue on the CMP Obligation beginning on the date of entry of this Consent Order and shall be determined by using the Treasury Bill rate prevailing on the date of entry of this Consent Order pursuant to 28 U.S.C. § 1961 (2012).

44.    Kaseman shall pay the CMP Obligation by electronic funds transfer, U.S. postal money order, certified check, bank cashier's check, or bank money order. If payment is to be made other than by electronic funds transfer, then the payment shall be made payable to the Commodity Futures Trading Commission and sent to the address below:

    Commodity Futures Trading Commission
    Division of Enforcement

13

      ATTN: Accounts Receivables
      DOT/FAA/MMAC/AMZ-341
      CFTC/CPSC/SEC
      6500 S. MacArthur Blvd.
      Oklahoma City, OK 73169
      (405) 954-7262 office
      (405) 954-1620 fax
      nikki.gibson@faa.gov

45.    If payment by electronic funds transfer is chosen, Kaseman shall contact Nikki Gibson or her successor at the address above to receive payment instructions and shall fully comply with those instructions. Kaseman shall accompany payment of the CMP Obligation with a cover letter that identifies Kaseman and the name and docket number of this proceeding. Kaseman shall simultaneously transmit copies of the cover letter and the form of payment to the Chief Financial Officer, Commodity Futures Trading Commission, Three Lafayette Centre, 1155 21st Street, NW, Washington, D.C. 20581.

46.    Partial Satisfaction: Acceptance by the CFTC of any partial payment of Kaseman's CMP Obligation shall not be deemed a waiver of Kaseman's obligation to make further payments pursuant to this Consent Order, or a waiver of the CFTC's right to seek to compel payment of any remaining balance.

### V. MISCELLANEOUS PROVISIONS

47.    Notice: All notices required to be given by any provision in this Consent Order shall be sent by overnight mail, return receipt requested, as follows:

Notice to the CFTC:

      Deputy Director Paul G. Hayeck
      Commodity Futures Trading Commission
      1155 21st Street, N.W.
      Washington, D.C. 20581

Case 1:16-cv-04220-VEC Document 631 Filed 04/23/18 Page 14 of 18

Notice to Settling Defendant:

>Yul Kaseman
>310 East 75th Street, Apt 4J
>New York, NY 10021

All such notices to the CFTC shall reference the name and docket number of this action.

48.    Change of Address/Phone: Settling Defendant shall provide written notice to the CFTC by certified mail of any change to her telephone number and mailing address within ten (10) calendar days of the change.

49.    Entire Agreement and Amendments: This Consent Order incorporates all of the terms and conditions of the settlement among the parties hereto to date. Nothing shall serve to amend or modify this Consent Order in any respect whatsoever, unless: (a) reduced to writing; (b) signed by all parties hereto; and (c) approved by order of this Court.

50.    Invalidation: If any provision of this Consent Order or if the application of any provision or circumstance is held invalid, then the remainder of this Consent Order and the application of the provision to any other person or circumstance shall not be affected by the holding.

51.    Waiver: The failure of any party to this Consent Order shall in no manner affect the right of the party at a later time to enforce the same or any other provision of this Consent Order. No waiver in one or more instances of the breach of any provision contained in this Consent Order shall be deemed to be or construed as a further or continuing waiver of such breach or waiver of the breach of any other provision of this Consent Order.

52.    Continuing Jurisdiction of this Court: This Court shall retain jurisdiction of this action in order to implement and carry out the terms of all orders and decrees that may be entered herein, to entertain any suitable application or motion for additional relief within the

jurisdiction of the Court, to assure compliance with this Consent Order and for any other purpose relevant to this action.

53. **Injunctive and Equitable Relief Provisions:** The injunctive and equitable relief provisions of this Consent Order shall be binding upon Kaseman and upon any person under her authority or control, and upon any person who receives actual notice of this Consent Order, by personal service, e-mail, facsimile or otherwise insofar as he or she is acting in active concert or participation with Kaseman.

54. **Counterparts and Facsimile or Electronic Execution:** This Consent Order may be executed in two or more counterparts, all of which shall be considered one and the same agreement and shall become effective when one or more counterparts have been signed by each of the parties hereto and delivered (by facsimile, e-mail, or otherwise) to the other party, it being understood that all parties need not sign the same counterpart. Any counterpart or other signature to this Consent Order that is delivered by any means shall be deemed for all purposes as constituting good and valid execution and delivery by such party of this Consent Order.

55. **Contempt:** Kaseman understands that the terms of the Consent Order are enforceable through contempt proceedings, and that, in any such proceedings she may not challenge the validity of this Consent Order.

There being no just reason for delay, the Clerk of the Court is hereby ordered to enter this *Consent Order For Permanent Injunction, Civil Monetary Penalty And Other Equitable Relief Against Yul Kaseman* forthwith and without further notice.

**IT IS SO ORDERED** on this  23rd  day of                              April       , **2018**.

*[Signature: Valerie Caproni]*

**Valerie Caproni**
**United States District Judge**

Case 1:16-cv-04120-VEC Document 631 Filed 04/23/18 Page 17 of 18

CONSENTED AND AGREED TO BY:

_____
Yul Kaseman

Date: 4/9/18

_____
LUKE B. MARSH
Chief Trial Attorney
GRETA GAO
Trial Attorney
U.S. Commodity Futures Trading Commission
1155 21st St., N.W.
Washington, DC 20581
(202) 418-5322 (Marsh)
lmarsh@cftc.gov
(202) 418-6158 (Gao)
ggao@cftc.gov

Dated 4/19/2018