```
UNITED STATES DISTRICT COURT                           USDC SDNY
SOUTHERN DISTRICT OF NEW YORK                          DOCUMENT
                                                       ELECTRONICALLY FILED
------------------------------------------------------X DOC #:_____
                                                     : DATE FILED: 12/3/2018
U.S. COMMODITY FUTURES                               :
TRADING COMMISSION,                                  :
                                                     :     16-CV-4120 (VEC)
                                Plaintiff,           :
                                                     :     OPINION AND ORDER
                 -against-                           :
                                                     :
HAENA PARK, YUL KASEMAN,                             :
PHAETRA CAPITAL GP LLC a/k/a                         :
ARGENTA CAPITAL GP LLC,                              :
PHAETRA CAPITAL MANAGEMENT                           :
LP a/k/a ARGENTA CAPITAL LLC, and                    :
ARGENTA GROUP LLC,                                   :
                                                     :
                                Defendants.          :
                                                     :
------------------------------------------------------X
```

VALERIE CAPRONI, United States District Judge:

Haena Park and the LLC defendants violated the Commodity Exchange Act. Defendants have admitted to multiple violations of the Act, including by defrauding at least 50 of Ms. Park's friends and family to the tune of more than $23 million over a six-year period. After pleading guilty to criminal charges, Ms. Park was sentenced to a three-year term of imprisonment, to be followed by three years of supervised release, and ordered to pay approximately $23 million in restitution. No. 16-CR-473, Dkts. 43, 51. This Court must now decide the appropriate civil restitution and penalty. As explained below, the Court will not duplicate the restitution order already imposed on Ms. Park but will order restitution by the LLC defendants, which were not criminally prosecuted, and will impose a civil monetary penalty of $100,000 to be paid jointly and severally by Ms. Park and the LLC defendants.

## I.     Background[1]

Before 2010, Ms. Park was, by all indications, a highly successful, hardworking, talented, and ambitious Ivy League graduate. CFTC Corrected Reply Br. (Dkt. 60), Ex. 1 at 10–11, 48. Despite not having learned English until she moved to the U.S. at the age of 13, she graduated valedictorian of her high school. *Id.* She then attended Harvard University and, after earning a degree in psychology, went to work for Goldman Sachs. *Id.* Ms. Park later helped grow a multi-million dollar investment fund into a multi-billion dollar fund. *Id.*

In 2010, Ms. Park founded her own firm, Argenta Capital GP LLC, and began soliciting and pooling funds, mostly from her family and friends, to trade in various foreign currencies and futures contracts. Park Consent Order (Dkt. 50) ¶¶ 25, 30. She told the fund participants that their money would be managed by Argenta or one of its related entities. *Id.* ¶ 30. The participants agreed to wire their investments to Ms. Park's personal bank accounts, as well as into a business account for Argenta that she controlled. *Id.* ¶ 27. Once she received the funds, Ms. Park transferred the vast majority of the funds into a personal trading account that she had created in which to trade foreign currencies and futures. *Id.* ¶¶ 25, 27. The trading account was not registered as a commodity pool. *Id.* ¶ 20.

What perhaps began as a genuine effort to manage and invest the funds soon began to unravel, as Ms. Park sustained heavy losses. *Id.* ¶ 30. Too ashamed to admit that she had decimated the life savings of people close to her, Ms. Park began fabricating results to avoid detection and to solicit additional funds, which she hoped to use to recover the losses. *Id.* ¶ 30; Park Response (Dkt. 56), Ex. B. By fabricating performance data and earnings statements, Ms. Park successfully convinced prospective and existing participants to deposit, maintain, and

---

[1] The facts in this case are not in dispute and are set forth in detail in two consent orders entered against Ms. Haena Park and Mr. Yul Kaseman. Park Consent Order (Dkt. 50), Kaseman Consent Order (Dkt. 63). The Court recounts only the details most relevant to Ms. Park.

increase their investments in the pool. Park Consent Order ¶¶ 29–30, 41. Between January 2010 and June 2016, Ms. Park obtained a total $23,186,860 from at least 50 individuals. *Id.* ¶ 24.

Ms. Park's risky trading decisions then resulted in the loss of 99% of the pooled funds. *Id.* ¶ 26. By the time Ms. Park was arrested in June 2016, her trading account had a balance of only $196,000. *Id*. During the six-year period, Ms. Park withdrew $1.74 million of the pooled funds to pay her own salary and to cover her personal expenses. *Id.* ¶ 27.

In addition to lying to her investors about her fund's performance, Ms. Park also repeatedly lied to the National Futures Association, a self-regulatory body that protects investors from fraud in the futures industry. *Id.* ¶ 52–54. In violation of statutory requirements, Ms. Park submitted 18 false or misleading reports to the Association on behalf of the Phaetra entities (renamed from Argenta) that she founded and managed. *Id.* ¶ 52–55. Even though she had solicited and pooled funds on behalf of those entities, she told the Association that the entities were not operational and that she only conducted trades using her own funds through her personal trading account. *Id.* ¶¶ 55, 59. Ms. Park therefore operated an unregistered commodities pool.

On June 2, 2016, the U.S. Commodity Futures Trading Commission (CFTC) commenced this civil suit against Ms. Park, alleging violations of the Commodity Exchange Act and its regulations. Dkt. 1. On July 8, 2016, Ms. Park was criminally indicted on two counts— commodities fraud and wire fraud. No. 16-CR-473, Dkt. 9. The civil case before this Court was stayed pending the resolution of the criminal case before Judge Ronnie Abrams. Dkt. 20.

On January 13, 2017, Ms. Park pleaded guilty to one count of commodities fraud and consented to forfeiture of her assets. No. 16-CR-473, Dkt. 25–26. On July 11, 2017, Judge Abrams sentenced Ms. Park to a three-year term of incarceration, to be followed by three years of supervised release. No. 16-CR-473, Dkt. 43. Judge Abrams also ordered restitution in the

amount of $22,917,551, reflecting the net loss to Ms. Park's victims, but declined to impose a fine or post-judgment interest. No. 16-CR-473, Dkt. 44 at 52 & 55, Dkt. 51.

After Ms. Park was sentenced, the Court lifted the stay in this case. Dkt. 30. In February 2018, on consent, this Court entered a permanent injunction and other relief against Ms. Park and the Argenta/Phaetra entities. Dkt. 50. At that time, Ms. Park and the LLC defendants admitted to the fraud and conceded numerous violations of the Commodity Exchange Act and CFTC's regulations. *Id.* The permanent injunction also restrained her from participating in any transaction involving commodity interests covered by the Act. *Id.* ¶¶ 97–98. The consent order also required Ms. Park and the LLC defendants to pay, on a joint and several basis, civil restitution and a civil monetary penalty to be determined by the Court. *Id.* ¶¶ 100–101.

The Court must now decide what civil restitution and penalty, if any, are appropriate.

## II. Discussion

### A. Civil Restitution and Post-Judgment Interest

The Government asks the Court to impose civil restitution in the same amount ordered in the criminal case, plus post-judgment interest.[2] CFTC Mem. of Law (Dkt. 55) at 6. Ms. Park, who is acting *pro se*, asks the Court not to impose any additional obligation beyond what Judge Abrams has already ordered in the criminal proceeding. Park Response at 2. As detailed below, the Court declines to order restitution as it would be duplicative and redundant in light of the existing restitution order entered in the criminal case.

The Commodity Exchange Act grants courts discretion to order various forms of equitable relief, including restitution based on the amount of loss to victims and disgorgement based on amount of gain by perpetrators. 7 U.S.C. § 13a-1(d)(3). Courts should order such equitable relief only "on a proper showing" by CFTC. *Id.*

---

[2] At the time that CFTC filed this motion, the restitution ordered in the criminal case was $22,912,796. No. 16-CR-473, Dkt. 47. The restitution amount was later amended to $22,917,551. No. 16-CR-473, Dkt. 51.

4

District courts have found restitution or disgorgement in civil enforcement actions to be unnecessary when there is an existing restitution order with the same or broader scope in a related criminal case. *See SEC v. Pace*, 173 F. Supp. 2d 30, 34 (D.D.C. 2001) ("Disgorgement would be redundant with the restitution [Defendant] will be required to pay as a consequence of his criminal conviction and will not be ordered." (citation omitted)); *SEC v. Murray*, No. 12-CV-1288, 2016 WL 6893880, at *8 (N.D. Cal. Nov. 23, 2016) (concluding that "no disgorgement order is warranted in this civil enforcement action" because the same funds "were the subject of the restitution order in the related criminal case"); *CFTC v. King*, No. 6-CV-1583, 2007 WL 1321762, at *3 (N.D. Tex. May 7, 2007) ("[T]he Court is concerned about the propriety of entering a duplicative award of restitution . . . , notwithstanding the Commission's request that the award be 'concurrent' with the order of restitution entered in [Defendant's] criminal case. The Court declines to award restitution . . . , finding no need to duplicate that order."); *see also CFTC v. White Pine Tr. Corp.*, No. 4-CV-2093 , 2007 WL 1754819, at *9 (S.D. Cal. Apr. 20, 2007) (denying request for disgorgement because it would be "coterminous" with already ordered restitution).

In this case, CFTC has not shown a need for a restitution order against Ms. Park that would be virtually identical to the restitution ordered to be paid as part of the sentence in the civil case. CFTC specifically asks the Court to order restitution in the same amount as Judge Abrams ordered in the parallel criminal proceeding. CFTC Mem. of Law at 6. Such restitution, like the restitution already ordered, would correspond to the total net loss suffered by the victims of Ms. Park's scheme. *Id.* The Commission further requests that the restitution be offset by any payments that Ms. Park makes towards the restitution already ordered. *Id.* As a result, the two parallel restitution orders, as to Ms. Park specifically, would completely overlap in terms of substance, purpose, and function. As in *King*, this Court finds no need to order the same relief twice. *See* 2007 WL 1321762, at *3.

As to the LLC defendants, however, the Court finds that a restitution order is warranted. Because the LLCs were not prosecuted in the criminal case before Judge Abrams, a restitution order in this case would not be duplicative. *See* No. 16-CR-473, Dkt. 51. As CFTC has requested, the Court will set the restitution amount at $22,917,551, corresponding to the amount of restitution entered in the criminal case. *See id.* The restitution due from the LLC defendants shall be offset by any payments made by Ms. Park towards the restitution in the criminal case.

The LLC defendants will also be required to pay post-judgment interest. By statute, post-judgment interest is mandatory upon entry of a civil money judgment. 28 U.S.C. § 1961(a) ("Interest shall be allowed on any money judgment in a civil case recovered in a district court."); *Lewis v. Whelan*, 99 F.3d 542, 545 (2d Cir. 1996) ("The award of post-judgment interest is mandatory on awards in civil cases as of the date judgment is entered." (citing § 1961(a))). As the Second Circuit has repeatedly recognized, Section 1961's "terms do not permit of the exercise of judicial discretion" once there is a civil money judgment. *Tru-Art Sign Co. v. Local 137 Sheet Metal Workers Int'l Ass'n*, 852 F.3d 217, 223 (2d Cir. 2017) (citing *Carte Blanche (Singapore) Pte., Ltd. v. Carte Blanche Int'l, Ltd.*, 888 F.2d 260, 269 (2d Cir. 1989)); *see also Cappiello v. ICD Publications, Inc.*, 720 F.3d 109, 115 (2d Cir. 2013).

For those reasons, CFTC's request for a restitution order and post-judgment interest is granted only as to the LLC defendants.

### B. Civil Monetary Penalty

In addition to civil restitution, CFTC seeks $5,220,000 in civil penalties, an amount that equals three times what Ms. Park withdrew from the pooled funds for personal use. CFTC Mem. of Law at 9–10. Ms. Park requests that the penalty be set at $50,000. Park Response at 5. For the reasons discussed below, the Court will impose a civil penalty of $100,000.

The Commodities Exchange Act authorizes civil monetary penalties "in the amount of not more than the greater of $100,000 or triple the monetary gain to the person for each

violation." 7 U.S.C.A. § 13a-1. The $100,000-per-violation cap is periodically adjusted for inflation per the Inflation Adjustment Act of 1990. 17 C.F.R. § 143.8 (2018). The applicable cap depends on when the violation was committed—violations can be punished by up to $130,000 each if committed before October 22, 2012; $140,000 if committed thereafter through November 1, 2015; and $161,115 if committed thereafter. *Id.*

According to the Second Circuit, sanctions under the Commodities Exchange Act should be calculated "to further the CEA's remedial policies and to deter others in the industry from committing similar violations." *Reddy v. CFTC*, 191 F.3d 109, 123 (2d Cir. 1999) (citation omitted). The penalty must be "rationally related to the offense" and should take into consideration "the general seriousness of the violation as well as any particular mitigating or aggravating circumstances that exist." *CFTC v. Fan Wang*, 261 F. Supp. 3d 383, 388 (S.D.N.Y. 2017) (citations omitted). As numerous courts have recognized, one of those mitigating factors is the defendant's ability to pay. *See, e.g.*, *id.* ("[T]he lower fine is more consistent with what the defendant can realistically pay."); *CFTC v. Paragon FX Enterprises, LLC*, No. 11-CV-7740, 2015 WL 2250390, at *5 (S.D.N.Y. Feb. 2, 2015) ("[C]ourts should be realistic and not set a figure which is impossible for a defendant to comply with due to lack of monetary resources." (citation omitted)).

In this case, the Commission asks the Court to set the penalty at three times the amount that Ms. Park withdrew from the pooled funds for her own compensation and expenses. Because Ms. Park withdrew $1.74 million, the penalty would total $5.22 million.[3] The Commission argues that this amount, while large, is justified by the duration of Ms. Park's fraud, the vast sum

---

[3] CFTC argues that, although it is seeking only $5.22 million in penalties, the maximum penalty is actually $69.6 million, because Ms. Park's monetary gain is the entirety of the approximately $23.2 million that she obtained from the pool participants. Because the agency's requested penalty does not exceed the lower figure, the Court declines to decide in this case whether $23.2 million or $1.74 million is the correct measure of monetary gain.

7

of money obtained via fraud, the number of individuals affected, the fact that the violations were committed knowingly, and the frequency of misrepresentations to investors and regulators.

On the other hand, several factors counsel against such a large penalty. First, in this case, the deterrence value of a civil penalty is marginal given the three-year term of incarceration, three-year term of supervised release, asset forfeiture, and restitution already imposed in the criminal proceeding. Second, the Court recognizes that it should not impose a penalty that a defendant cannot realistically pay. As Ms. Park points out, she currently has no assets and will likely be paying off the $23 million restitution order for the rest of her life, both during her prison term and after her release at around age 45.[4] Her fraud conviction and the injunction restraining her from engaging in trading activity likely mean that she will never again work in finance, where her skills would be most relevant. And finally, the Court notes that Ms. Park has been cooperative in the criminal case and in this case, including promptly consenting to the entry of injunctive and other relief.

Even taking all of those mitigating factors into account, however, it is clear that, in terms of scale and duration, Ms. Park's conduct is significantly more severe than the average commodities violation and does warrant a substantial penalty. *Cf. CFTC v. 4X Sols., Inc.*, No. 13-CV-2287, 2015 WL 9943241, at *1 (S.D.N.Y. Dec. 28, 2015) (defrauding 19 individuals of $4.8 million), *report and recommendation adopted*, No. 13-CV-2287, 2016 WL 397672 (S.D.N.Y. Jan. 29, 2016); *CFTC v. EJS Capital Mgmt., LLC*, No. 14-CV-3107, 2015 WL 13359358, at *1 (S.D.N.Y. Dec. 18, 2015) ($2 million fraud); *CFTC v. SK Madison Commodities, LLC*, No. 14-CV-2025, 2014 WL 3887755, at *1 (S.D.N.Y. June 9, 2014) ($1.3 million fraud); *CFTC v. Arista LLC*, No. 12-CV-9043, 2013 WL 6978529, at *3 (S.D.N.Y. Dec.

---

[4] Nor is there any indication that the LLC defendants, which are almost certainly defunct as a result of Ms. Park's arrest and the injunction against trading activity, have any remaining assets or income. The Court also notes that funds held in Argenta Group LLC's bank accounts have already been forfeited in the criminal case. No. 16-CR-473, Dkt. 36.

3, 2013) ($9.5 million fraud involving 39 investors); *CFTC v. Kim*, No. 11-CV-1013, 2011 WL 1642772, at *3 (S.D.N.Y. April 15, 2011) (total loss of $3.1 million). For that reason, the Court will set the penalty at $100,000, two times what Ms. Park has suggested; the Court finds that this amount strikes the appropriate balance considering the seriousness of the violation, the amount that Ms. Park can reasonably pay, and the punishment already imposed by Judge Abrams for the misconduct.

As with the restitution obligation, post-judgment interest will accrue on the civil monetary penalty pursuant to 28 U.S.C. § 1961(a). Accordingly, Ms. Park and the LLC defendants will be jointly and severally liable for a civil penalty of $100,000, plus post-judgment interest.

### III. Conclusion

For the foregoing reasons, it is hereby ordered that Phaetra Capital GP LLC, Phaetra Capital Management LP, and Argenta Group LLC shall pay, on a joint and several basis, restitution in the amount of $22,917,551, less amounts paid by Haena Park towards the restitution ordered in the criminal action, plus post-judgment interest. CFTC's motion for a restitution order against Haena Park is denied.

It is further ordered that Haena Park, Phaetra Capital GP LLC, Phaetra Capital Management LP, and Argenta Group LLC shall pay, on a joint and several basis, a civil monetary penalty in the amount of $100,000, plus post-judgment interest.

The Clerk of the Court is respectfully directed to terminate the open motion at docket entry 54. The Clerk is also respectfully requested to mail a copy of this Order to Ms. Park. Plaintiff CFTC shall submit a proposed form of judgment consistent with this Order by **December 21, 2018**.

**SO ORDERED.**

Date: December 3, 2018
New York, NY

_____
**VALERIE CAPRONI**
**United States District Judge**